UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HEATH and VALERINE GARCIA,

    Plaintiffs,

v.

ISLAND COUNTY; ROBERT MIRABAL; and MICHAEL HAWLEY,

    Defendants.

C20-1318 TSZ

ORDER

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 19, as to which neither side has requested oral argument. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following Order.

**Discussion**

Plaintiffs' claims stem from an incident in September 2017, during which plaintiff Heath Garcia attempted to persuade Nicholas Perkins, a suicidal, fellow member of the United States Navy, to disarm himself and leave his home, which was surrounded by Island County Sheriff's Office ("ICSO") personnel. The situation ended tragically, with Perkins being killed and Garcia suffering serious, disabling injuries, as a result of which he was medically separated from the Navy. Plaintiffs assert four causes of action, the first two of which are brought pursuant to 42 U.S.C. § 1983: (i) state-created danger; (ii) unreasonable seizure; (iii) outrage; and (iv) negligence.

ORDER - 1

A. **Qualified Immunity**

Defendants Island County Sheriff's Deputies Robert Mirabal and Michael Hawley seek summary judgment on plaintiffs' § 1983 claims on the ground of qualified immunity. With regard to a § 1983 claim, an individual defendant is entitled to qualified immunity if either of the following criteria is satisfied: (i) the alleged facts do not demonstrate a constitutional violation; or (ii) the constitutional right allegedly violated was not "clearly established" at the time of the events at issue. See Pearson v. Callahan, 555 U.S. 223, 232 (2009). Whether a police officer is entitled to qualified immunity is an issue of law that must be decided by the Court, see Hunter v. Bryant, 502 U.S. 224, 228 (1991), but the Court may submit the related factual matters to a jury, see Morales v. Fry, 873 F.3d 817, 823–24 (9th Cir. 2017). As the parties seeking summary judgment based on qualified immunity, Mirabal and Hawley bear the burden of demonstrating the absence of any genuine issue of material fact. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). They have not met their burden.

1. **State-Created Danger**

Plaintiffs assert their state-created danger claim against both Mirabal and Hawley, as well as Island County.[1] The state-created danger doctrine operates as an exception to the general rule that members of the public have no constitutional right to protection by law enforcement personnel. See Hernandez v. City of San Jose, 897 F.3d 1125, 1133 (9th Cir. 2018); Jamison v. Storm, 426 F. Supp. 2d 1144, 1153 (W.D. Wash. 2006). For over

---

[1] Plaintiffs' claim against Island County is addressed in Section C, infra.

ORDER - 2

thirty years, the Ninth Circuit has recognized state-created danger as a constitutional tort. See Jamison, 426 F. Supp. 2d at 1153 (citing Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989)).  The Ninth Circuit's standard is as follows:  liability may be premised on "state action [that] 'affirmatively places the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced," provided that the danger was known or obvious or the defendant acted with deliberate indifference to it.  Kennedy v. City of Ridgefield, 439 F.3d 1055, 1061 & 1064 (9th Cir. 2006).

Mirabal and Hawley attempt to characterize the risks of interacting with an armed, suicidal person barricaded in his home as having been voluntarily assumed by Garcia, and not affirmatively created by ICSO personnel.[2]  Garcia, however, indicates that Hawley, who was the incident commander, led him to believe that the situation was less

---

[2] The parties dispute whether Garcia entered Perkins's residence with Hawley's express consent. Compare Garcia Dep. at 20:2–18 & 26:2–11, Ex. 4 to Krulewitch Decl. (docket no. 22 at 69–70) ("I said, 'You know, I know Nick Perkins.  I can try to talk to him.'  He said, . . . something to the effect of 'It's worth a shot,' something like that. . . .  It was our idea.  It's not my idea, it's our idea.  He's the scene commander.  So even if I were to say, 'Yeah, I want to go in' and he says, 'No,' I'm not going anywhere. . . .  It was a joint effort . . . .  We came to an agreement because he let me through the perimeter.") and Brown Decl. at ¶ 8, Ex. 5 to Krulewitch Decl. (docket no. 22 at 87) ("There was no miscommunication about the understanding that Heath [Garcia] and I would be back into the house with Lt. Hawley's permission.  It was thoroughly discussed with Lt. Hawley and done with his permission.") with Hawley Narrative, Ex. 18 to Krulewitch Decl. (docket no. 22 at 328) ("While [I was] on the phone with the NCIS agent, Dep. Brewer radioed that a NAS Base Security Chief Gomez [sic] and roommate Nathan [sic] has suddenly re-entered the residence without permission or notifying anyone.") and Hiatt Narrative (docket no. 22 at 332) ("Lt. Hawley advised dispatch that the Chief [Garcia] entered the residence against advisement from law enforcement and that units would not be entering the house as long as the suspect was armed.").  For purposes of their motion for summary judgment, defendants indicate that "Hawley did not prevent Mr. Garcia from entering the home to speak with Mr. Perkins."  See Defs.' Reply at 2–3 (docket no. 25).  Contrary to defendants' contention, this summary does not construe the facts in the light most favorable to Garcia.

ORDER - 3

serious than it actually was, never told him that Perkins was armed with an AR-15 rifle, and did not warn him that, contrary to an agreement made to encourage Perkins to leave the house, Hawley had not instructed deputies to vacate the premises. See Garcia Decl. at ¶¶ 4–6, Ex. 6 to Krulewitch Decl. (docket no. 22 at 91–92). According to Garcia, if he had known that Hawley did not intend to honor the agreement with Perkins, he would not have attempted to walk Perkins out of the home, which was the precursor to the violent struggle during which Garcia was injured and Perkins was fatally shot. Id. Moreover, Mirabal's act of slinging a loaded assault rifle behind his back, allegedly without activating the trigger safety, before tackling Perkins and Garcia, who had wrapped his arms around Perkins to prevent Perkins from raising a shotgun, created an arguably obvious danger that Garcia would not have otherwise faced and that was part of the chain of conduct by ICSO personnel leading to Garcia being shot in the ankle. Rather than explaining how Garcia's account of the incident is insufficient as a matter of law to survive the invocation of qualified immunity, Mirabal and Hawley have implicitly asked the Court to resolve various factual disputes and draw certain inferences against Garcia. This the Court will not do.

## 2. **Unreasonable Seizure**

Plaintiffs bring their unreasonable seizure claim against only Mirabal and Island County.[3] A person is seized within the meaning of the Fourth Amendment when his or

---

[3] Although plaintiffs pleaded a failure-to-train based Monell claim relating to Mirabal's allegedly unreasonable seizure of Garcia, see Compl. at ¶¶ 5.1–5.2 (docket no. 1), they have apparently abandoned the claim. Plaintiffs have offered no evidence or analysis to support the proposition that Mirabal's tackling of Perkins and Garcia resulted from a deliberately-indifferent failure to train.

ORDER - 4

her freedom of movement is terminated by governmental means intentionally applied. *Villanueva v. California*, 986 F.3d 1158, 1166 (9th Cir. 2021).  Mirabal attempts to cast *Villanueva* as articulating law that post-dates the incident at issue, but in *Villanueva*, the Ninth Circuit described the jurisprudence at the time when officers opened fire on a vehicle, killing the driver and injuring the passenger, namely in July 2016, which was over a year before the events in this case.  *See id.* at 1162–63.  *Villanueva* stands for the proposition that, in intentionally (as opposed to accidentally) stopping the vehicle, officers seized both the driver and the passenger.  *Id.* at 1166–69.  The Ninth Circuit made clear that whether the officers intended to shoot the passenger or even knew he was in the vehicle mattered not.  *Id.* at 1168.  Similarly, here, Mirabal's subjective intent to "free" Garcia and restrain only Perkins is not relevant.  The question is whether Mirabal's undisputedly intentional actions, which had the effect of restricting both Perkins and Garcia, constituted either an unreasonable seizure or excessive force.  This question cannot be answered without weighing the evidence and making factual findings, neither of which the Court may do in deciding a motion for summary judgment.

       3.      **"Clearly Established" Rights**

To be "clearly established," the contours of the alleged constitutional right must simply be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  In other words, the "state of the law" must give "fair warning" to the officer that the conduct in question is unconstitutional.  *Id.* at 739–41; *see A.D. v. Cal. Highway Patrol*, 712 F.3d 446, 454 (9th Cir. 2013).  This "fair warning," however, does not require that the "very action" at issue be previously deemed

ORDER - 5

1   unlawful; rather, the unlawfulness must just be "apparent" in light of the pre-existing law.

2   *Hope*, 536 U.S. at 739 (quoting *Anderson*, 483 U.S. at 640); see *Hernandez*, 897 F.3d at

3   1137–39.  In this matter, the question of whether Mirabal and Hawley had notice that

4   their behavior was unconstitutional depends on which version of the events is believed

5   and, as a result, the Court is precluded from granting summary judgment.

6   **B.     Section 1983 Claims Against Individual Defendants**

7   For the same reasons that the Court cannot confer qualified immunity as a matter

8   of law, the Court is unable to grant summary judgment in favor of Mirabal or Hawley

9   with respect to the merits of plaintiffs' § 1983 claims.  Defendants' motion for summary

10  judgment is therefore DENIED as to the state-created danger and unreasonable seizure

11  claims against the individual defendants.

12  **C.     Section 1983 Claim Against Island County (*Monell* Liability)**

13  A municipality may not be held liable under § 1983 on a respondeat superior

14  theory.  *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978); see *Ulrich v.*

15  *City & Cnty. of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002).  Instead, municipal

16  liability must be premised on one of four theories:  (i) a policy or longstanding practice or

17  custom from which the alleged constitutional violation resulted; (ii) an unconstitutional

18  action by an official with final policy-making authority; (iii) ratification by an official

19  with final policy-making authority of a subordinate's unconstitutional conduct; or (iv) a

20  failure to adequately train employees that amounts to deliberate indifference concerning

21  the constitutional right at issue.  See *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th

22  Cir. 2005); see also *City of Canton v. Harris*, 489 U.S. 378 (1989).

23

Plaintiffs attempt to rely on a combination of the first, third, and fourth concepts, but their reasoning is flawed. The ICSO has a Crisis Response Unit ("CRU"), which is comprised of a Crisis Negotiation Team and a Crisis Action Team. See ICSO Policy 408, Ex. 17 to Krulewitch Decl. (docket no. 22). Plaintiffs contend that the ICSO routinely violated its written policies calling for the CRU to be involved in "barricade" situations. See Plas.' Resp. at 16 (docket no. 21). The ICSO policies, however, indicate that "[t]he supervisor in charge on the scene of a particular event will assess whether the Crisis Response Unit is to respond to the scene," ICSO Policy 408.8.1 (docket no. 22 at 311), and that, "[u]pon being notified that a hostage or barricade situation exists, the supervisor should immediately respond to the scene, assess the risk level of the situation," and "request[ ] a Crisis Response Unit response *if appropriate*," ICSO Policy 414.5 (docket no. 22 at 316) (emphasis added). The ICSO policies make clear that deploying the CRU, even after its personnel arrive at the scene, is discretionary. See ICSO Policies 408.8.6 & 414.6 (docket no. 22 at 312 & 316). Moreover, in defining "barricade" scenarios, ICSO Policy 414 describes its purpose as providing "guidelines for situations where deputies have legal cause to contact, detain or arrest a person, and the person refuses to submit to the lawful requests of the deputies by remaining in a structure or vehicle and/or by taking a hostage." ICSO Policy 414.1 (docket no. 22 at 313). As indicated by Hawley in his deposition, the incident involving Perkins did not rise to the level of a "barricade" situation. See Hawley Dep. at 153:14–24, Ex. 2 to Krulewitch Decl. (docket no. 22 at 51) ("[T]he term 'barricaded' kind of indicates that a crime has been committed, and he's refusing to surrender to police and [be] taken into custody. I've never heard it referred, a suicidal subject, as being . . . barricaded into the house. . . . [T]here have [been] times

ORDER - 7

where I -- we just [say], 'Okay, bye.' We drive away."). Plaintiffs have offered no basis for concluding that the ICSO's CRU policies were even violated,[4] much less violated as part of a longstanding practice or custom, a product of ratification by an official with final policy-making authority, or the result of inadequate training. In addition, plaintiffs' hypothesis that all would have ended well if CRU personnel had simply arrived earlier is entirely speculative. Defendants' motion for summary judgment is GRANTED in part, and plaintiffs' § 1983 claim against Island County is DISMISSED with prejudice.

### D.  Outrage

In Washington, intentional infliction of emotional distress constitutes the same tort as outrage. *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003). Under Washington law, the elements of the tort of outrage are: (i) extreme and outrageous conduct; (ii) intentional or reckless infliction of emotional distress; and (iii) actual result to the plaintiff of severe emotional distress. *Id.* at 195; *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 261, 928 P.2d 1127 (1997). The claim must be predicated on conduct that is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

---

[4] Plaintiffs' experts criticize Hawley for not requesting that CRU respond to the scene. *See* Leach Report at 7–8 & 12–13, Ex. 1 to Krulewitch Decl. (docket no. 22 at 15–16 & 20–21); Burwell Report at 13–14 & 18–19, Ex. 8 to Krulewitch Decl. (docket no. 22 at 112–13 & 117–18). The experts accuse Hawley of exercising his discretion on September 17, 2017, in a manner that was contrary to international and/or national standards, ICSO policy, practice, or custom, and/or his training, the adequacy of which they question without citing any evidence. Their disagreements with Hawley's decisions do not, however, demonstrate that the constitutional violations at issue, *i.e.*, placing Garcia in a state-created danger and unreasonably seizing him, were caused by an ICSO policy, longstanding practice or custom, ratification by a policymaker, or deliberately-indifferent failure to train.

civilized community." <u>Kloepfel</u>, 149 Wn.2d at 196; <u>Dombrosky</u>, 84 Wn. App. at 261. The question of whether particular conduct rises to the requisite level of outrageousness is "ordinarily a question of fact for the jury." <u>Dombrosky</u>, 84 Wn. App. at 261. The Court may dismiss an outrage claim only if reasonable minds could not differ as to the conclusion that the alleged behavior was not sufficiently extreme. <u>See id.</u> at 261–62. The Court cannot draw such conclusion in this case, and the merits of plaintiffs' outrage claim must be assessed by the trier of fact. Defendants' motion for summary judgment as to plaintiffs' outrage claim is DENIED.

### E. <u>Negligence</u>

Defendants asked that the Court decline to exercise supplemental jurisdiction over plaintiffs' negligence claim. In light of the Court's ruling on plaintiffs' § 1983 claim against Hawley and Mirabal, defendants' request is moot. <u>See</u> 28 U.S.C. § 1367. The Court would have denied defendants' motion in any event. This case was commenced in this district, and the Court would not have forced plaintiffs, at this late stage of the action, to commence an entirely new lawsuit in state court.

### F. <u>Punitive Damages</u>

To prevail on their § 1983 claim premised on state-created danger, plaintiffs must prove deliberate indifference, which is tantamount to reckless disregard, <u>see Smith v. Wade</u>, 461 U.S. 30 (1983), and if they do so, they are entitled to request that the jury award punitive damages. <u>See</u> 9th Cir. Model Instr. 5.5. Thus, defendants' motion to strike plaintiffs' prayer for punitive damages is DENIED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Defendants' motion for summary judgment, docket no. 19, is GRANTED in part and DENIED in part. Plaintiffs' *Monell* (§ 1983) claim against Island County is DISMISSED with prejudice. Defendants' motion is otherwise DENIED. The claims remaining for trial are as follows: (i) state-created danger (§ 1983) claim against Mirabal and Hawley; (ii) unreasonable seizure (§ 1983) claim against Mirabal; (iii) outrage claim against Island County; and (iv) negligence claim against Island County.

(2) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 2nd day of September, 2022.

Thomas S. Zilly
United States District Judge